[No. 21007. Department One. March 5, 1928.]

NATIONAL ASSOCIATION OF CREDITORS, INCORPORATED,
*Appellant,* v. B. D. BROWN, *Respondent.*[1]

[1] STATUTES (31)—VALIDITY—SUBJECT NOT EXPRESSED IN TITLE.
The title to Rem. 1927 Sup., § 1756-1, "relating to the venue of
civil actions in justice court," is not sufficiently broad to include
the provision that the justice shall acquire no jurisdiction of
an action brought in justice court against a nonresident of the
precinct, resident in a city of the county, and that no judgment
shall be entered therein against such defendant (TOLMAN, J.,
dissenting).

Appeal from a judgment of the superior court for
Pierce county, Card, J., entered July 12, 1927, dismiss-
ing an action to enjoin the enforcement of a judgment
of a justice of the peace upon sustaining a demurrer
to the complaint. Reversed.

*O. S. Galbreath* and *H. B. Gardner,* for appellant.

FRENCH, J.—In June, 1927, plaintiff brought an ac-
tion against the defendant in the justice court of
Ruston precinct, Pierce county, the defendant at that
time being a resident of the city of Tacoma. On the
return day the justice, having called to his attention
that the defendant was a resident of the city of Ta-

¹Reported in 264 Pac. 1005.

coma, entered his judgment of dismissal, which judgment was in the form prescribed by ch. 264 of the Laws of 1927, p. 614; Rem. 1927 Sup., § 1756-1, holding that the action should be dismissed and "that such dismissal shall be a bar to any future action on the same cause of action." Thereupon the plaintiff began the present action in the superior court of Pierce county, attacking the validity of the judgment entered by the justice of the peace. A demurrer being sustained to the complaint, final judgment of dismissal was entered and this appeal follows.

Appellant squarely questions the constitutionality of ch. 264 of the Laws of 1927, p. 614, claiming that the same is unconstitutional for the reasons:

First, that the title is insufficient under § 19, art. II of the state constitution;

Second, that the act is not uniform in operation and therefore violates § 10, art. IV of the state constitution;

Third, that it amends the act of 1925 by mere reference, in violation of § 37, art. II of the state constitution;

Fourth, that it violates the provisions of § 3, art. I of the state constitution and the Fourteenth Amendment to the Federal constitution;

Fifth, that it denies the equal protection of the laws, contrary to the Fourteenth Amendment to the Federal constitution, and grants special privileges and immunities in violation of § 12, art. I of the state constitution.

[1] We will first consider the first question raised by appellant, namely, the sufficiency of the title. In *Northern Cedar Co. v. French,* 131 Wash. 394, 230 Pac. 837, this court recently said:

"We have held that this constitutional provision should be liberally construed and that the title need

not be a complete index of the subject-matter of the act, but that it will be sufficient if it fairly covers the matter legislated upon, and that a general title will include all matters incidental and germane thereto, and that objections to the title must be grave and the conflict between it and the constitution palpable before we will hold an act unconstitutional."

It was there held that a title referring to agricultural products was broad enough to embrace a provision in the act relating to forestry products. We cite this case as illustrative merely of the principle that a general title will be sustained where a restrictive one would be fatal.

Let us look at some of the cases wherein titles have been held too restrictive. The leading case is *Percival v. Cowychee etc. Irr. District,* 15 Wash. 480, wherein a title showing the objects of an act to be to provide for the organization and government of irrigation districts and the sale of bonds arising therefrom was held too narrow to embrace a provision for the validation of indebtedness previously incurred. This court said:

"If this provision was in force it was sufficient to authorize the levy in question, but it is claimed that it is void for the reason that it is not within the title of the act, and hence in violation of § 19 of art. 2 of the constitution. The title of the act in which the provision is contained is in the following language:

" 'An Act to amend an act providing for the organization and government of irrigation districts and the sale of bonds arising therefrom, and declaring an emergency, the same being §§ 1, 2, 4, 10, 16, 17, 18, 19, 20, 22, 24, 25, 26, 27, 28, 29, 30, 31, 33, 34, 35, 36, 38, 39, 40, 42, 59 and 70, approved March 20th, 1890, and declaring an emergency.'

"The wording of this title is such as to make it difficult to determine the exact title of the act of which it was amendatory. It was in the following language:

" 'An Act providing for the organization and government of irrigating districts and the sale of bonds

arising therefrom, and declaring an emergency.'
. . .

"It will appear from a comparison of the two titles
that there is no language used in the one to the amend-
atory act which in any manner extends the title to the
original act. The latter act is simply amendatory of
the former one, and the subject matter embraced in the
title is the same. Hence, the question presented for
decision is as to whether or not a title which shows
nothing more than that the act is to provide for the
organization and government of irrigation districts
and the sale of bonds arising therefrom is broad
enough to warrant the enactment thereunder of a pro-
vision for the validating of the indebtedness of a dis-
trict which might have been organized thereunder, and
the levying of a tax to pay the same.

"That the provision in the constitution in question
should be reasonably construed and legislation sus-
tained which fairly comes within the subject-matter
embraced in the title has been frequently held by this
court. See *Marston v. Humes,* 3 Wash. 267 (28 Pac.
520); *In re Rafferty,* 1 Wash. 382 (25 Pac. 465). And
such we believe to be the tendency of the decisions of
all of the courts. But it will not do to sustain legisla-
tion which is so foreign to the subject matter embraced
in the title that one could read such title without hav-
ing his attention in any manner directed toward the
legislation attempted to be embraced thereunder. A
title may be as broad as the legislature sees fit to make
it, and thereunder any specific legislation, as to any
subject relating to the general matter thus broadly em-
braced in the title, sustained. But when it sees fit to
adopt a restricted title and thereunder attempts to
enact provisions not fairly within such restricted title,
such provisions cannot be given force by reason of the
fact that it would have been competent for the legisla-
ture to have adopted a more generic title and there-
under properly included all of the provisions of the
act.

"The object of such constitutional provisions is two-
fold: first, to prevent log-rolling legislation; and sec-
ond, to require such a title that one reading it would

have his attention directed to every subject matter in the act. Having this latter object in view, was the title of the act in question sufficient to authorize the enactment thereunder of the provision which was the foundation of this tax levy? Would one reading the title of the act which simply provided for the organization of irrigation districts have his mind at all directed to the question of validating an indebtedness which such district had in the past sought to incur? It seems to us not.''

A virtually similar holding was made in *State ex rel. Potter v. King County,* 49 Wash. 619, 96 Pac. 156, where this court said:

''The constitutional provision, § 19, art. 2, which provides that no bill shall embrace more than one subject and that shall be expressed in the title, was incorporated in the constitution for a beneficial purpose, viz., for the protection and enlightenment of the members of the legislature and for notice to citizens at large of proposed legislation which they might desire by proper methods to encourage or defeat; and when laws are enacted or amended in substantial violation of this guaranty, the taint of at least suspicion of unfairness is upon them, and courts should not hesitate to declare them void.''

In *Blalock v. Condon,* 51 Wash. 604, the court said:

''The first part of the title, viz., 'An Act relating to the defense of the statute of limitations in actions brought by or for the benefit of the state or any of its municipalities,' is clearly too narrow and restricted to admit of affirmative legislation fixing the time when an action by private parties shall be deemed commenced.''

In *State ex rel. Arnold v. Mitchell,* 55 Wash. 513, 104 Wash. 791, this court held a title relating to primary elections insufficient to embrace a provision having to do with registration, saying in part:

''If the act of 1909, in so far as it refers to section 12, be an attempted amendment of the registration law or of the primary law, it is void because there is no

suggestion of an amendment to the registration law, or that section 12 of the primary law is to be amended in the title of the act. Perhaps the most salutary provision in our state constitution is § 2, art. 19: 'No bill shall embrace more than one subject and that shall be expressed in the title.' In it the people have found their most potent weapon against vicious legislation. It is a declaration that truth must go before, shedding its light upon every legislative act. It makes the title speak the object of the law. A wholesome statute, if declaratory of a subject not within the title, must fall before it, for it is general in its application. While it is intended as a guard against the bad in legislation, it is also intended as a herald of the true intent and purpose of the law. It is not within the power of the courts to declare a law which is passed in contravention of this mandate wholesome because it is so. If this power were exercised, it would result in direct violation of the constitutional mandate and a usurpation of the functions of the legislature on the part of the courts. Laws should be sustained or defeated by considerations of present policy rather than by reference to the constitution. It is not possible within the limits of this opinion to cite the authorities in support of this rule. We shall, therefore, pass it as axiomatic.''

The most recent expression is found in *Potter v. Whatcom County*, 138 Wash. 571, 245 Pac. 11, wherein a title relating to townships was held insufficient to sustain a provision placing the cost of certain bridges against counties. This court said:

"The title of the 1923 act is, 'An act relating to townships and amending §§ 11369, 11375, 11376, 11378, 11404, 11433, 11441, 11445 and 11456 of Remington's Compiled Statutes' (Laws of 1923, ch. 13, p. 14), and contains no reference to counties, their duties or liabilities; and yet the office of the proviso quoted is to place the whole responsibility for bridges costing in excess of three hundred dollars upon the county. The constitutional provision, art. II, § 19, state constitution, seems clearly to have been disregarded, and under our prior holdings we have no choice but to hold

the title of the amendatory act insufficient to give effect to the proviso quoted.''

See, also, *State v. Clark,* 43 Wash. 664, 86 Pac. 1067, where Judge Rudkin quotes from Cooley showing the purposes and objects of such constitutional provision. The case itself is not exactly in point, for there the title was held so general as to be vague and ambiguous and to fail to inform the legislators of what was being legislated on.

The title of ch. 264, Laws of 1927, p. 614, is:

''An Act relating to the venue of civil actions in justice courts.''

That title manifestly was a sufficient title for ch. 53, Laws of 1925, Ex. Ses., p. 48, for that act, as construed in *Nichols v. National Association of Creditors,* 137 Wash. 74, 241 Pac. 960, was purely a venue statute; but a casual inspection of the act of 1927 shows that it has to do with the question of jurisdiction. Its substantial provision is to the effect that, if a civil action is brought contrary to venue requirements of ch. 53, ''No jurisdiction over the defendant shall be acquired thereby, and no judgment shall be entered therein against such defendant.''

''Venue'' and ''jurisdiction'' are entirely distinct matters, and one does not embrace the other. *McMaster v. Advance Thresher Co.,* 10 Wash. 147, 38 Pac. 670; *State ex rel. Grays Harbor Commercial Co. v. Sup. Ct.,* 118 Wash. 674, 204 Pac. 783; *State ex rel. Seattle Nat. Bank v. Joiner,* 138 Wash. 212, 244 Pac. 551; *Cartwright v. Kulzer,* 140 Wash. 206, 248 Pac. 419; *State ex rel. Yakima Trust Co. v. Mills,* 140 Wash. 357, 249 Pac. 8; *Lucas v. Luckenbach Steamship Co.,* 141 Wash. 504, 252 Pac. 526; *State ex rel. Sav. & Loan Co. v. Sup. Ct.,* 142 Wash. 296, 252 Pac. 923.

In *Fribourg v. Pullman Co.*, 176 Fed. 981, in explaining the Federal statute defining jurisdiction of the old circuit courts, the court said:

". . . A careful examination of the facts and the opinion in that case will show that it is in harmony with the decisions of the Supreme Court. The distinction between jurisdiction and venue will explain any apparent conflict in the decisions. The Circuit Courts are given jurisdiction in a controversy between a citizen of one state and a citizen of a foreign state, etc. This status of the parties is jurisdictional and cannot be waived—the venue is a personal privilege granted to defendant, and may be, either expressly or by failure to take advantage of it in due time and by appropriate means, waived. 'In discussing matters of pleading and practice arising under this and similar provisions, it is to be observed that the question thus presented is, generally speaking, not a matter that goes to the essential jurisdiction of the court. If a suit is of such a nature that it can certainly be brought in some Federal court, or another—that is, if the subject-matter of the suit, or the character of the parties, is such that a Federal court of some state or district has jurisdiction to entertain it—then the question whether that suit should be brought in one particular state, or district, rather than in another, is not a question of jurisdiction at all. It is rather a question of venue, using this word in the sense of the civil division from which the jury must be gathered, and in which the cause, *if an equity one*, should be tried. True, the term 'jurisdiction' is frequently used in this connection, and as a result some confusion has appeared in the cases. . . . As commonly put, the distinction is one between essential jurisdiction on the one hand; and an exemption from process on the other. . . . In the sense in which we now use the word, it may be said that the question of venue and the question of jurisdiction are wholly different and distinct. . . . Jurisdiction cannot be conferred by consent of the parties and the want of it cannot be waived. The venue is a matter of personal privilege and can therefore be waived by the party concerned.' 1 Street's Fed. Eq.

Prac. §§ 383-384; *Const. Co. v. Gibney,* 160 U. S. 219, 16 Sup. Ct. 272, 40 L. Ed. 401; *Southern Express Co. v. Todd,* 56 Fed. 104, 5 C. C. A. 432. . . ."

From what we have heretofore said, we think it clearly appears that the title to the act is insufficient within the decisions of this court construing § 19, art. II of our constitution.

We think there is merit in the other constitutional questions presented by appellant, but the conclusion we have reached on the question first outlined makes it unnecessary to discuss the other matters.

The judgment is reversed, with instructions to proceed in accordance with this opinion.

MACKINTOSH, C. J., PARKER, and MITCHELL, JJ., concur.

TOLMAN, J., dissents.